```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                          TAMPA DIVISION
```

PURETERRA NATURALS, INC., KRISTEN
WATTERS, and JULIE NUGENT,

    Plaintiffs,

v.                                                  Case No. 8:09-cv-797-T-33MAP

CUT HEAL ANIMAL CARE PRODUCTS,
INC.,

    Defendant.
_____/

JENNIFER ELLIOTT and LAST CHANCE
RANCH, INC.,

    Plaintiff-Intervenors,

v.

PURETERRA NATURALS, INC., KRISTEN
WATTERS, JULIE NUGENT, and CUT HEAL
ANIMAL CARE PRODUCTS, INC.,

    Defendants-in-Intervention.
_____/

**ORDER**

    This cause comes before the Court pursuant to Plaintiff-Intervenors Jennifer Elliott and Last Chance Ranch, Inc.'s Motion to Dismiss Counterclaim of PureTerra Naturals, Inc. pursuant to Rule 12(b)(6), Fed. R. Civ. P., filed on February 18, 2011. (Doc. # 76). On March 4, 2011, Defendant-in-Intervention PureTerra filed a Memorandum in Opposition to the

Motion to Dismiss. (Doc. # 77). PureTerra also requests that the Court award fees and costs incurred in defending against the Motion to Dismiss. Id. at 6. For the reasons that follow, both the Motion to Dismiss and request for fees and costs are denied.

I. **Background**

This is an indemnity action triggered by an underlying patent infringement lawsuit. (Doc. # 58 at 7). PureTerra is a Florida corporation with its principal place of business in Tampa, Florida. (Doc. # 1 at 2, ¶ 5). PureTerra distributes natural animal care products. Id. Jennifer Elliott is a Florida resident who was a Director of Last Chance Ranch. (Doc. # 54 at 2, ¶ 1; Doc. # 58 at 4, ¶ 3). Last Chance Ranch is an inactive Florida corporation which had its principal place of business in Ocklawaha, Florida. (Doc. # 58 at 4, ¶ 2).

On January 11, 2008, PureTerra entered into an Asset Purchase Agreement with Elliott and Last Chance Ranch. (Doc. # 54 at 2, ¶ 8). Pursuant to Section 1.1(c) of the Asset Purchase Agreement, Elliott and Last Chance Ranch sold, among other assets, United States Patent No. 5,620,695 (the '695 Patent) to PureTerra. Id. at 3, ¶ 9. The '695 Patent was the primary asset transferred under the Asset Purchase Agreement. (Doc. # 58 at 4, ¶ 6).

In Section 5.1 of the Asset Purchase Agreement, Elliott and

2

Last Chance Ranch indemnified PureTerra with respect to representations Elliott and Last Chance Ranch made to PureTerra regarding the '695 Patent. (Doc. # 54 at 3, ¶ 10). One of those representations was that Elliott and Last Chance Ranch had good, valid, and marketable title to the '695 Patent. Id.

The relevant indemnification provision follows:

> Seller Indemnification.  Seller hereby agrees to indemnify and hold harmless Buyer, its affiliates and its and their respective directors, officers, partners, members, managers, employees, and agents, against and in respect of all losses, liabilities, obligations, damages, deficiencies, actions, suits, proceedings, demands, assessments, orders, judgments, costs and expenses (including the reasonable fees, disbursements and expenses of attorneys and consultants) of any kind or nature whatsoever, but net of the proceeds from any insurance policies or other third party reimbursement for such loss, to the extent sustained, suffered or incurred by or made against any indemnified party, to the extent based upon, arising out of or in connection with: (a) any breach of any representation or warranty made by Seller in this Agreement or in any schedule, exhibit, certificate, agreement or other instrument delivered pursuant to this Agreement; (b) any breach of any covenant or agreement made by Seller in this Agreement or in any schedule, exhibit, certificate, financial statement, agreement or other instrument delivered pursuant to this Agreement; (c) any claim made by any person or entity which relates to the operation of the Assets or the Business which arises in connection with or on the basis of events, acts, omissions, conditions or any other state of facts occurring on or existing before the date hereof; and (d) any claim which arises in connection with any liability or obligation of Seller other than the Assumed Liabilities.

(Doc. # 49-1 at 13-14, ¶ 5.1).

On April 28, 2009, PureTerra, Kristen Watters and Julie Nugent initiated the underlying patent infringement action by filing a lawsuit against Cut Heal, a Texas corporation, for infringement of the '695 Patent. (Doc. # 1).[1] In its answer to the complaint, Cut Heal asserted eight affirmative defenses, many of which challenged the validity of the '695 Patent. (Doc. # 26 at 4-5; Doc. # 58 at 6).

On November 12, 2010, Elliott and Last Chance Ranch filed a motion to intervene asserting that they had "numerous interests in the ['695] Patent" and that without their involvement, their interests would not be "adequately represented by [the] existing parties." (Doc. # 49 at 3-4). These interests include, among other things, a contractual duty to indemnify PureTerra if the '695 Patent is found invalid, a security interest in the '695 Patent, a right to foreclose on the '695 Patent in the event PureTerra defaults on its payments, and a contractual right to receive royalty payments from PureTerra. Id.

In the motion to intervene, Elliott and Last Chance Ranch specifically emphasized their "contractual duty to indemnify PureTerra in the event the ['695] Patent is held to be invalid."

---

[1] Both Watters and Nugent are directors of PureTerra. (Doc. # 1 at 2, ¶ 6-7).

4

(Id. at 4; see Doc. # 54 at 4-5). In arguing that their interests "are not adequately represented by existing parties," Elliott and Last Chance Ranch assert that "[t]his is especially true with respect to [Elliott and Last Chance Ranch's] contractual duty to indemnify PureTerra in the event the ['695] Patent is held to be invalid" because PureTerra "may attempt to hold [Elliott and Last Chance Ranch] liable if the ['695] Patent is determined to be invalid, and [Elliott and Last Chance Ranch], as indemnitors, must protect themselves and their potential liability . . . ." (Doc. # 49 at 4). On December 2, 2010, the Court granted the motion to intervene. (Doc. # 53).

On December 6, 2010, Elliott and Last Chance Ranch filed an intervenor complaint against PureTerra and Cut Heal, seeking a declaratory judgment regarding the validity of the '695 Patent. (Doc. # 54). In its answer to the intervenor complaint, PureTerra asserts one counterclaim against Elliott and Last Chance Ranch seeking indemnity for patent litigation. (Doc. # 58 at 7). PureTerra alleges that Elliott and Last Chance Ranch possessed knowledge of, but failed to disclose, "the facts and circumstances that allegedly give rise to Cut-Heal's affirmative defenses attacking the validity of the '695 Patent" at the time the Asset Purchase Agreement was signed. Id. at 6.

PureTerra further contends that "[e]ven though Ms. Elliot

5

and Last Chance Ranch allege in their Complaint for Intervention that the [Asset] Purchase Agreement requires them to indemnify PureTerra, Ms. Elliot and Last Chance Ranch have refused PureTerra's demands for indemnification [in litigating the '695 Patent]."  Id. at 6.  Elliot and Last Chance Ranch move to dismiss PureTerra's counterclaim, arguing that it was prematurely filed.  (Doc. # 76 at 2).

## II. Legal Standard

A motion to dismiss a counterclaim under Rule 12(b)(6) of the Federal Rules of Civil Procedure is evaluated in the same manner as a motion to dismiss a complaint.  Stewart Title Guar. Co. v. Title Dynamics, Inc., No. 2:04-cv-316-FTM-33SPC, 2005 WL 2548419, at *1 (M.D. Fla. Oct. 11, 2005).  A complaint or counterclaim must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all factual allegations in a complaint or counterclaim as true and construe them in the light most favorable to the plaintiff.  See United Techs. Corp. v. Mazer, 556 F.3d 1260, 1269 (11th Cir. 2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.

Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

"While a complaint [or counterclaim] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." Id. (internal citations omitted); River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274 (11th Cir. 2008)("To survive dismissal, the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed.").

### III. **Analysis**

Elliott and Last Chance Ranch argue that PureTerra's counterclaim for indemnity should be dismissed because it was prematurely filed. There has been no determination that any

7

warranty in the Asset Purchase Agreement has been breached, and accordingly, they contend that the indemnity claim is not ripe for adjudication. They also point out that PureTerra may ultimately prevail in its patent infringement action against Cut Heal.

Elliott and Last Chance Ranch rely on Northland Cas. Co. v. HBE Corp., 160 F. Supp. 2d 1348 (M.D. Fla. 2001), to support their argument that indemnity actions cannot be filed until there has been a resolution of the underlying claim. In Northland, the parties sought a declaration of their rights and obligations under an insurance policy. Id. at 1352. The defendant was issued general liability policies by the plaintiff. Id. The Northland plaintiff asked the court to declare that it was not required to indemnify the defendant. Id. at 1353.

In evaluating the plaintiff's duty to indemnify, the Court noted that because one of the underlying lawsuits "remain[ed] pending," "the issue of [the plaintiff's] duty to indemnify [the defendant] . . . is not ripe for adjudication." Id. at 1363. The Northland court determined that the plaintiff was under no obligation to pay until the resolution of the underlying lawsuits brought those matters within the scope of coverage under the policy. Id. at 1364.

The Northland case, however, is distinguishable from the case at bar. The Northland court considered an insurer who brought a declaratory judgment action against its insured and the claimant. See Id. at 1360. The court expressly contemplated an *insurer's* obligation to indemnify under a *policy of insurance.* See Id. "Because an *insurer's duty* to indemnify is dependent on the outcome of a case, any declaration as to the duty to indemnify is premature unless there has been a resolution of the underlying claim." Id. (emphasis added).

In contrast to Northland, the present case involves a contractual indemnity action in which the main purpose of the contract at issue is *not* indemnification. Rather, the indemnity provision is incidental to the transfer of the '695 Patent and other assets.

"Florida District Courts of Appeal are the law of Florida unless and until overruled by the Florida Supreme Court. Thus, a federal court applying state law is bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." Liberty Mut. Ins. Co. v. Aventura Eng'g & Constr. Corp., 534 F. Supp. 2d 1290, 1303 (S.D. Fla. 2008) (internal citations and quotations omitted).

Florida courts routinely distinguish between indemnity

9

contracts issued in an insurance context and indemnity provisions that are incidental to a contract, the main purpose of which is not indemnification. See Westinghouse Elec. Corp. v. Prudential Ins. Co. of Am., 547 So. 2d 721, 722 (Fla. 1st DCA 1989). In Westinghouse, the court noted that "[i]n construing an indemnity provision not given by one in the insurance business but given as an incident to a contract, *the main purpose of which is not indemnification*, the indemnity provision must be construed strictly in favor of the indemnitor." Id. (emphasis added). In contrast, ambiguities in insurance provisions drafted by one in the insurance business are accorded starkly different treatment: "Ambiguous coverage provisions are construed strictly against the insurer that drafted the policy and liberally in favor of the insured." Fayad v. Clarendon Nat'l Ins. Co., 899 So. 2d 1082, 1086 (Fla. 2005).

Further, in Barton-Malow Co. v. Grunau Co., 835 So. 2d 1164, 1166 (Fla. 2d DCA 2002), the court again distinguished between indemnity provisions in an insurance versus in a noninsurance context. In deciding a noninsurance indemnity action, the court found that while "contracts of insurance commonly include provisions requiring the insurer to both defend and pay damages," which are generally held to be severable, "this principle does not necessarily follow in a noninsurance

10

context" and "is particularly true when the main purpose of the contract at issue is not indemnification . . . ." Id. (internal citations omitted).

In this case, the distinction between indemnity provisions in an insurance as opposed to a noninsurance context is applicable. In contrast to indemnity contracts issued in an insurance contract, contractual indemnity actions in which the indemnity provision is incidental to a contract can be filed prior to judgment in the underlying case. BP Prods. N. Am., Inc., v. Giant Oil, Inc., 545 F. Supp. 2d 1257, 1260 (M.D. Fla. 2008) ("[C]ontractual indemnity actions can be filed prior to judgment in the underlying case."); Chappell v. Scarborough, 224 So. 2d 791, 796 (Fla. 1st DCA 1969).

In Chappell, the court clarified the contours of the indemnification requirement:

> Where the contract is one for indemnity against liability as distinguished from indemnity against loss or damage, it is generally held that an action may be brought and a recovery had as soon as the liability is legally imposed, as when judgment is entered. It is sufficient to show that a judgment has been recovered against the person to be indemnified, although such judgment remains unpaid.
>
> A mere claim or demand against an indemnitee when no legal liability exists does not give rise to a right to indemnity under an agreement to indemnify against liability in the sense of accrued liability. Where, however, the contract is so expressed as to protect the obligee against any claim, suit, or demand, even the institution of a suit against the obligee has been

>held to entitle him to an action against his guarantor.

Id. at 794 (quotations omitted); see also Westinghouse, 547 So. 2d at 721 (finding that appellant was not entitled to contractual indemnity for its cost of defending a suit because it incurred no liability in the underlying suit and the contract provided that only those "claims, damages, losses or expenses (including costs and attorney's fees) *by reason of liability imposed by law*" triggered the indemnity obligation) (emphasis added).

Elliot and Last Chance Ranch assert that PureTerra's counterclaim is premature because there has been no determination that the underlying agreement has been breached, and there is a possibility that PureTerra may prevail in its patent infringement action against Cut Heal. Even assuming, arguendo, that these contentions are true, the scope of protection specified in the indemnity provision entitles PureTerra to bring its action now.

Here, in addition to protecting against breaches of the Asset Purchase Agreement, the indemnification provision explicitly protects PureTerra from "all losses, liabilities, obligations, damages, deficiencies, actions, suits, proceedings, demands, assessments, orders, judgments, costs and expenses . . . of any kind or nature whatsoever . . . arising out of or in

12

connection with . . . any claim made by any person or entity which relates to the operation" of the assets transferred in the Asset Purchase Agreement, the thrust of which was the transfer of the '695 Patent. (Doc. # 49-1 at 13-14). The breadth of this protection would encompass the underlying patent infringement dispute in which Cut Heal asserts affirmative defenses challenging the validity of the '695 Patent. (Doc. # 26 at 4-5).

Elliott and Last Chance Ranch incorrectly characterize PureTerra's counterclaim as prematurely filed. PureTerra's counterclaim is appropriately filed, and PureTerra is entitled to proceed with its counterclaim without delay. See Chappell, 224 So. 2d at 796 (finding that an indemnity cross-claim was "not barred nor postponed until such time as liability may be imposed . . . by the rendition of a judgment . . . in the original action.").

Finally, PureTerra requests that the Court award fees and costs incurred in defending against the motion to dismiss. Although the Court has denied the motion to dismiss, PureTerra fails to cite any authority in support if its request for fees and costs. In the absence of an applicable rule or statutory basis for such a request, the Court declines to award fees and costs.

13

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Plaintiff-Intervenors Jennifer Elliott and Last Chance Ranch, Inc.'s Motion to Dismiss Counterclaim of PureTerra Naturals, Inc. pursuant to Rule 12(b)(6) (Doc. # 76) is **DENIED**.

(2) Defendant-in-Intervention PureTerra Naturals, Inc.'s request for fees and costs incurred in defending against the Motion to Dismiss is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>19th</u> day of May, 2011.

*[signature]*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record

14